IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**UNTIED STATES OF AMERICA,**

    **Plaintiff,**

  **v.**
                                             **Case No. 2:11-cr-80**
                                             **JUDGE ECONOMUS**

**SHERON PHIPPS,**

    **Defendant.**

## OPINION AND ORDER

### I.

On April 7, 2011, the Grand Jury returned a single-count indictment against Defendant Sheron Phipps ("Defendant") charging him with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C). (*See* Doc. 8.) The indictment alleges that the offense occurred on or about March 10, 2010. (Doc. 8.) On June 2, 2011, Defendant pleaded guilty to the charge against him.

In the presentence report, the Probation Officer calculated a base offense level of 32. This calculation was based in part on her conclusion that a total quantity of seven kilograms of cocaine should be attributed to Defendant as relevant conduct pursuant to § 1B1.3 of the Sentencing Guidelines. Defendant objects to the quantity of cocaine attributed to him by the Probation Officer.

A sentencing hearing in this matter was held on January 12, 2012. During the hearing, the Government offered evidence of Defendant's drug-trafficking activities. Following the presentation of evidence, the Court continued the hearing and afforded the Parties an opportunity

1

to brief issues related to the evidence presented by the Government. Briefing is now complete. Having considered the arguments and the evidence presented, the Court finds that a total quantity of 3 kilograms of cocaine should be attributed to Defendant, resulting in a base offense level of 28.

## II.

Pursuant to § 1B1.3(a) of the Sentencing Guidelines, base offense level is determined on the basis of:

>   (1) (A)  all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant;
>
>   (B) and in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
>   that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense; [and]
>
>   (2) solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction . . . .

U.S. SENTENCING GUIDELINES MANUAL § 1B1.3(a)(1)–(2) (2011). Application Note 2 to § 1B1.3 provides that:

>   With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook.

*Id.* § 1B1.3 cmt. application n.2.

2

Regarding § 1B1.3(a)(2), Application Note 3 clarifies that application of that provision does not require a defendant to have been convicted of multiple counts. *See id.* § 1B1.3 cmt. application n.3. Rather, the provision applies to "offenses of a character for which §3D1.2(d) would require grouping of multiple counts, had the defendant been convicted of multiple counts." *Id.* Section 3D1.2(d) specifically lists offenses covered by § 2D1.1, the guideline applicable to drug trafficking, as offenses that require grouping pursuant to § 3D1.2. *See id.* § 3D1.2(d).

The Court's factual findings with regard to relevant conduct must be made by a preponderance of the evidence. *United States v. Stout*, 599 F.3d 549, 558 (6th Cir. 2010). In making factual findings, the court may consider relevant information without regard to the rules of evidence, provided that the information has "sufficient indicia of reliability to support its probable accuracy." U.S. SENTENCING GUIDELINES MANUAL § 6A1.3(a). *See also Stout*, 599 F.3d at 558.

**A.**

At the sentencing hearing, the Government called Jeff Edwards and Ann Durbin of the Franklin County Sherriff's Office to testify. Additionally, the Government offered several exhibits.

Edwards is currently assigned to the Drug Enforcement Agency ("DEA")'s Columbus task force, where he investigates narcotics crimes. On March 9, 2010, he was conducting surveillance at Defendant's residence at 6336 Royal Tern Crossing in Columbus. Edwards observed Defendant exit the residence carrying two trash bags, enter a vehicle, drive to a dumpster, and deposit the trash bags in the dumpster. In one of the trash bags, Edwards discovered three "kilogram-sized" bags with white powder residue, a gallon-sized plastic bag

with white powder residue, a can of acetone, and a plastic container of inositol. The white residue in the bags was cocaine. According to Edwards, the "kilogram-sized" bags were actually wrappers, that, in his experience, are of the type used to store kilogram-sized bricks of cocaine. Two of the discovered wrappers still retained the three-dimensional shape of a cocaine brick. Edwards further testified that acetone and inositol are cutting agents, used by drug traffickers to dilute pure cocaine. On cross-examination, he conceded that these substances have non-illicit uses as well. He further conceded that he was unable to determine whether the kilogram wrappers found in the dumpster actually contained entire kilograms of cocaine while in Defendant's possession.

Durbin is also currently assigned to the DEA's Columbus task force. She participated in the execution of a search warrant at 6336 Royal Tern Crossing on March 10, 2010. According to her, immediately behind the front door was a device that she described as a cocaine press. On a couch in the living room was a loaded firearm. In the kitchen were two cans of acetone, a container of inositol, a digital scale, and a baggie of cocaine. She further testified that another firearm and over $12,000 in currency were discovered in the master bedroom. A bottle of prescription oxycodone tablets was also found during the search. However, on cross-examination, Durbin testified that there was no evidence that Defendant was selling the oxycodone.

Lakia Jackson was present at the residence during the search. She provided a statement to the agents carrying out the search in which she stated that the cocaine, currency, and one of the guns belonged to Defendant. Jackson also told Durbin that the oxycodone had been given to Defendant to take for his back pain.

4

Also on March 10, 2010, Edwards arrested Defendant following a traffic stop. According to Edwards, over $14,000 in currency was discovered in Defendant's vehicle. Further, upon being given the Miranda warnings, Defendant indicated that he was unemployed and admitted that the small quantity of cocaine discovered in the search of his residence on that day was his.

Durbin testified that during the investigation of Defendant, she also was involved in an investigation of Defendant's cousin, Anthony Phipps. On April 21, 2010, she participated in the execution of a search warrant at 3080 East 13th Street in Columbus in connection with the investigation of Anthony Phipps. Present at that residence during execution of the search warrant were, among others, Anthony Phipps and his uncle, Johnny Cumberlander, the owner of the residence. According to Durbin, during the search, agents discovered $9,000 in cash, a firearm, a backpack with approximately one kilogram of cocaine inside it, and a quantity of crack cocaine. The name "Sheron Phipps" was written on a label inside the backpack.

After Anthony Phipps was given the Miranda warnings, he elected to cooperate with Durbin. At Durbin's office, he participated in an interview in which he stated that the backpack containing the kilogram of cocaine had been delivered by Defendant to Cumberlander's residence a few days before the search warrant was executed. According to Anthony Phipps, he had been purchasing kilogram quantities of cocaine from Defendant for three to five years. Durbin testified that Phipps told her that he received one or two kilograms of cocaine from Defendant every few weeks.

On cross-examination, Durbin admitted that she did not know whether the backpack actually belonged to Defendant or his son, and never attempted to find out. She further conceded that Anthony Phipps had told her that he had had other suppliers of cocaine beside Defendant in the past. She also slightly revised the quantities of cocaine Anthony Phipps had told her he was

5

purchasing from Defendant down to one-half to a whole kilogram every two to three weeks as opposed to one to two kilograms every few weeks. The revised quantity is corroborated by a DEA investigation report submitted by the Government, which also specifies that Anthony Phipps stated that he had been purchasing those quantities of cocaine from Defendant for the six months prior to the search at 3080 East 13th Street. (*See* Doc. 36-1 at 5.)

**B.**

"A sentencing court may hold a defendant accountable for a specific amount of drugs only if the defendant is more likely than not responsible for a quantity greater than or equal to that amount." *United States v. Owusu*, 199 F.3d 329, 338 (6th Cir. 2000). "If the exact amount of drugs involved is uncertain, the court may make an estimate supported by competent evidence in the record." *Id.* In estimating the quantity of drugs, the Court "should err on the side of caution." *Id.*

The Government contends that between five and fifteen kilograms of cocaine should be attributed to Defendant, resulting in a base offense level of 32. Defendant, on the other hand, contends that only 200 to 300 grams of cocaine should be attributed to him, which would result in a base offense level of 20.

As an initial matter, the Court concludes that the Government did not proffer sufficient evidence at the sentencing hearing to prove that Defendant had any involvement with the quantity of crack cocaine discovered at Cumberlander's residence or that Defendant sold oxycodone as part of his drug trafficking activities. Accordingly, distribution of these controlled substances will not be attributed to Defendant as relevant conduct.

The Court next considers the quantity of cocaine, keeping in mind that it is preferable to err on the side of caution in situations such as this where the exact quantities are uncertain.

Pursuant to the drug quantity table found in § 2D1.1(c) of the guidelines, a defendant's base offense level is 32 if greater than or equal to five, but less than fifteen kilograms of cocaine are attributed to his or her conduct; greater than or equal to three and one-half but less than five kilograms yields a base offense level of 30; and greater than or equal to two but less than three and one-half kilograms yields a base offense level of 28. U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c) (2011).

The evidence tying Defendant to cocaine distribution is as follows: the items Defendant discarded in his dumpster, including three wrappers of the type used to store kilograms of cocaine, and a gallon-sized plastic bag, each containing cocaine residue; the items found in Defendant's residence including a small quantity of cocaine, firearms, over $12,000 in currency, a press used for processing cocaine, a scale, and cutting agents; Defendant's admission that the cocaine found in his residence was his and Lakia Jackson's similar statement to the police; the $14,000 in currency that was discovered in Defendant's vehicle when he was arrested; a backpack with Defendant's name written in it, containing approximately one-kilogram of cocaine, found at Cumberlander's residence in April 2010; and Anthony Phipps' statements to the police that the backpack had been delivered by Defendant and that he had purchased kilogram quantities of cocaine from Defendant for at least six months prior to the April 2010 search of Cumberlander's residence.

**1.**

The Government argues that Defendant's relevant conduct should involve at least five kilograms of cocaine based on historical sales to Anthony Phipps under one of three theories. First, the Government asserts that, pursuant to § 1B1.3(a)(1)(A), the evidence demonstrates Defendant personally was involved with distributing at least five kilograms of cocaine either in

preparation for, or during the commission of the offense of conviction. Second, the Government contends that, pursuant to § 1B1.3(a)(1)(B), Defendant engaged in a joint criminal activity with Anthony Phipps, and therefore he should be held accountable for the drug quantities with which Anthony Phipps was involved as foreseeable acts that furthered the joint criminal activity. These theories essentially overlap, however, because, as far as Anthony Phipps' conduct is concerned, the record only contains evidence of his cocaine purchases from Defendant during the relevant time period. Accordingly, drug quantities that could be attributed to Defendant through joint criminal activity with Anthony Phipps are the same as those for which Defendant could be held individually accountable pursuant to § 1B1.3(a)(1)(A) because Anthony Phipps was buying his cocaine from Defendant.

Defendant argues that because the indictment is limited to the period on or about March 10, 2010, and the relevant conduct standards of § 1B1.3(a)(1) are limited to acts "that occurred during the commission of the offense of conviction, [or] in preparation for that offense," the Court should not attribute to Defendant the kilogram of cocaine found in the backpack at Cumberlander's residence on April 21, 2010, or any historical sales of cocaine by Defendant to Anthony Phipps in the months preceding the timeframe of the indictment. The Court finds this argument to be persuasive. The plain language of the § 1B1.3(a)(1) requires that the relevant conduct either occur in temporal proximity to the offense of conviction or in preparation for that offense. Any sales of cocaine made by Defendant to Anthony Phipps outside of the narrow timeframe of the indictment do not satisfy the element of temporal proximity. Further, it is unclear how sales of cocaine to Anthony Phipps either prior to or after the time period specified in the indictment could be considered to be "in preparation for" possession with intent to distribute cocaine during the time period.

8

Defendant further argues that Anthony Phipps' statements to law enforcement lack the indicators of reliability necessary to be credited by the Court.  If his statements are credited, the record would support a conclusion that Defendant was likely selling cocaine to Anthony Phipps during the time period covered by the indictment.  That is because, according to him, he purchased cocaine exclusively from Defendant for six months prior to April 2010, which would include the period on or about March 10, 2010.  However, the Court agrees with Defendant that the Government has failed to demonstrate that Anthony Phipps' statements are sufficiently reliable.  In this regard, Phipps did not testify at the sentencing hearing.  Accordingly, the Government relies exclusively on the hearsay statements made to Durbin and in the presentence report.  While the Court is not bound to follow the rules of evidence during sentencing, some quantum of credible evidence in addition to Anthony Phipps' statements themselves is required before the statements can be accepted.  This is especially true given that the Court should err on the side of caution in estimating drug quantities.

The Government could look to the backpack containing a kilogram of cocaine, labeled in Defendant's name, as corroborating Anthony Phipps' statements.  However, any corroborating support is undermined by the fact that Durbin made no efforts to determine if the backpack actually belonged to Defendant.  Further, the Court notes that the backpack was seized approximately sixth weeks—far from an insignificant period of time—after law enforcement discovered cocaine at Defendant's residence.

The Government's third theory is that, pursuant to § 1B1.3(a)(2), Defendant's sales of cocaine to Anthony Phipps during the time period before and after that of the indictment are "part of the same course of conduct or common scheme or plan as the offense of conviction."  While that provision does not contain a similar requirement of temporal proximity as §

1B1.3(a)(1), that theory similarly fails because of the lack of reliability of Anthony Phipps' statements.

**2.**

Accordingly, the Court is left to consider the items discovered in Defendant's residence and in the trash bags he discarded in the dumpster on March 9, 2010. Based on this evidence, the Court concludes that three kilograms of cocaine should be attributed to Defendant as relevant conduct, resulting in a base offense level of 28. As noted above, Edwards observed Defendant discard three wrappers of the type typically used to store kilograms of cocaine. These wrappers contained cocaine residue. While Edwards admitted during cross-examination that he could not conclusively state that the wrappers actually contained whole kilograms of cocaine at the time they were in Defendant's possession, considering all of the evidence, the Court concludes Defendant was processing kilogram quantities of cocaine at his residence, and, therefore, the empty wrappers each contained one kilogram.

First, items used in cocaine processing were discovered in Defendant's residence, including cutting agents (acetone and inositol), a press, and a scale. While these items undoubtedly may be employed in non-illicit activities, the fact that cocaine was found in the residence and cocaine residue was found on the wrappers leads to the conclusion that the above items were likely used in drug processing. Second, Defendant stated that he was unemployed, yet a total of over $26,000 in currency was discovered in his vehicle and his residence. At the sentencing hearing, Defendant asserted that this currency may have come from a bar or restaurant Defendant had an interest in, but the totality of the circumstances suggests otherwise.

Third and finally, two loaded firearms were discovered in the house, one of which was easily accessible on a couch in the living room. Based on the noted corroborating evidence, the

Court is justified in concluding that the empty wrappers each contained a kilogram of cocaine while in Defendant's possession. *See United States v. Acevedo*, 28 F.3d 686 (7th Cir. 1994) (affirming sentence where sentencing judge estimated quantity of drugs from, inter alia, packages containing drug residue and estimate was corroborated by other factors) (cited by *United States v. Smartt*, 60 F. App'x 549, 550 (6th Cir. 2003)).

However, given that the Court must err on the side of caution, it does not consider what quantity of cocaine may have been contained in the gallon-sized plastic bag found in the dumpster. In this regard, based on the evidence before the Court, the conclusion that the bag was used to process cocaine taken from the three wrappers is just as likely as any alternative conclusion. Thus, to avoid the possibility of including the same quantities of cocaine twice in its tally, the Court refrains from speculating as to what separate quantity of cocaine may have been stored in the gallon bag.

For the above reasons, the Court concludes that, by a preponderance of the evidence, the three wrappers deposited in the dumpster each contained one kilogram of cocaine and that that cocaine was possessed with intent to distribute by Defendant. Further, pursuant to § 1B1.3, the three kilograms should be attributed to Defendant as quantities of cocaine with which he was directly involved. As Defendant was charged with possession with intent to distribute the quantity of cocaine discovered in his residence on March 10, 2010, the Court finds that a preponderance of the evidence supports the conclusion that the three kilograms of cocaine were possessed with intent to distribute either during the commission of, or in preparation for that offense per § 1B1.3(a)(1).

**III.**

For the above stated reasons, the Court finds that Defendant's base offense level is 28. Having reached this conclusion, the Court will resume Defendant's sentencing hearing on February 3, 2012 at 2 p.m.

**IT IS SO ORDERED.**

 01/26/2012 /s/ Peter C. Economus
**DATED** **PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**